IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| ASHLEY MARSHALL CARTER, | |
| Movant, | CASE NO.: 5:21-cr-3 |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

### REPORT AND RECOMMENDATION

Movant Ashley Carter ("Carter") filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct his Sentence under 28 U.S.C. § 2255. Doc. 105. Respondent filed a Response. Doc. 112. I conducted a hearing on this matter on May 15, 2024. Docs. 134, 138. For the following reasons, I **RECOMMEND** the Court **DENY** Carter's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Carter leave to appeal *in forma pauperis* and a Certificate of Appealability.

### BACKGROUND

Carter was indicted on one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Doc. 1. Carter faced a sentence of not more than 20 years' imprisonment. Doc. 2. Carter was later charged by superseding indictment of one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Doc. 30. Carter faced a sentence of at least 5 years but not more than 20 years in prison on the distribution count and not more than 20 years in prison on the possession count. Doc. 31. After a two-day jury

trial, the jury returned a verdict of guilty on both counts of the superseding indictment on June 8, 2022.  Docs. 87, 89, 93.  Carter's trial counsel, Marc Metts, filed a motion for new trial on June 21, 2022.  Doc. 95.  The Court denied the motion on August 4, 2022.  Doc. 98.  The Honorable Lisa Godbey Wood sentenced Carter on October 3, 2022, to 180 months' imprisonment on each count, to be served concurrently; judgment was entered on October 5, 2022.  Doc. 102.

On September 28, 2023, Carter filed the instant § 2255 Motion.  Doc. 105.  The Government filed a Response.  Doc. 112.  I appointed Wrix McIvaine to represent Carter during these § 2255 proceedings.  Doc. 119.  I conducted an evidentiary hearing on this matter on May 15, 2024.  Docs. 134, 138.  Carter, Mr. Metts, and Matthew Porter testified during this hearing.[1]

## DISCUSSION

Carter asserts five claims of ineffective assistance of trial counsel in his § 2255 Motion:

1. Counsel did not have the knowledge or experience to adequately defend him;

2. Counsel never formally presented Carter with a plea offer, even though Carter was willing to accept responsibility;

3. Counsel failed to have an expert witness investigate the evidence and testify at trial;

4. Counsel did not review the presentence investigative report ("PSR") with him; and

5. Counsel failed to file a notice of appeal, even though Carter asked him to do so.

Doc. 105.  The Government responded, arguing the record does not support the first four of Carter's ineffective assistance of counsel claims.  Doc. 112 at 1–9.  The Government noted the fifth ground—that Carter asked Metts to file a direct appeal and Metts failed to do so—involved a disputed issue of fact and, therefore, the Court needed to conduct an evidentiary hearing to

---

[1]  The Court was informed Mr. Metts passed away not long after May 15, 2024 hearing.

2

resolve the issue.  Id. at 9.  The Government stated its attorney had spoken with Mr. Metts twice about the appeal issue, and Mr. Metts informed the attorney Carter "explicitly instructed Metts not to file an appeal."  Id.  Mr. Metts explained that Carter did not want to appeal because he received a lower sentence than expected and he (Carter) had a conversation with his mother after sentencing that convinced him not to appeal.  Id.  As noted above, I did conduct a hearing on the notice of appeal issue.  The Court addresses each of Carter's grounds, though I begin with ground 5—Carter's assertion Mr. Metts failed to file an appeal on his behalf.

**I.      Carter's Ineffective Assistance of Counsel Claims Lack Merit**

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001), and on appeal, Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Strickland, 466 U.S. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind

3

of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (internal citation omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." Id. at 1312–13. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

A. **Notice of Appeal**

In his Motion, Carter notes Judge Wood advised him during the sentencing hearing he had a right to file a direct appeal and had 14 days in which to file an appeal. Doc. 105 at 14. Carter states he told Mr. Metts he wanted to appeal "directly after his sentencing hearing[.]" Id. Carter also states Mr. Metts said he would file the notice of appeal but had not been hired to represent Carter on appeal. Carter maintains Mr. Metts failed to file a notice of appeal within the 14-day period, resulting in Carter's appeal being time barred. Id.

Counsel for the Government states it spoke with Mr. Metts about this ground twice. Doc. 112 at 9. In those conversations, Mr. Metts stated that Carter "explicitly instructed" him not to file an appeal after Carter obtained a lower-than-expected sentence and was able to discuss the case with his mother after the sentencing hearing. Id.

"[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Roe v. Flores-Ortega, 528 U.S. 470, 477–78 (2000) (holding it is professionally

5

unreasonable for attorney to fail to follow defendant's express appeal instructions). In addition, defense counsel generally has a duty to consult about an appeal, including informing a client about the right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to pursue an appeal. Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007). Despite this general duty, the United States Supreme Court has not adopted "a bright-line rule that counsel must always consult with the defendant regarding an appeal." Flores-Ortega, 528 U.S. at 480. Instead, and with taking into consideration the totality of the circumstances, counsel has a duty to consult regarding an appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id.

At the evidentiary hearing, Carter testified that after the trial in this case, Mr. Metts told Carter he (Metts) would file an appeal on Carter's behalf. Hr'g Tr. at 14. Carter also testified he waited three to six months' time after sentencing to contact Mr. Metts, at which point Mr. Metts admitted he failed to file an appeal. Id. Carter also testified he and Mr. Metts had a conversation right after sentencing, and Mr. Metts stated he had let Carter down but would definitely file an appeal. Id. & at 15. Carter stated he asked Mr. Metts to appeal. Id. at 20. On direct examination, Carter stated, "I want to fight this till the day I die. I'm innocent." Id.

On cross-examination, at one point Carter stated Mr. Metts said after sentencing he would file a notice of appeal, but at another point Carter stated he and Mr. Metts had a conversation after sentencing and he could not remember what they discussed. Id. at 28, 30.

6

Carter also admitted he was not the author of his § 2255 Motion and only answered questions for the person who typed the Motion. Id. at 36.

The Government then called Mr. Metts as a witness. Mr. Metts testified he had been a practicing attorney since 2006 and had practiced criminal law his entire career, including representing approximately 20 indigent defendants in this District and in the Middle District of Georgia almost that long. Id. at 59. Mr. Metts testified he filed two appeals on behalf of these indigent defendants, including one appeal that was pending at the time of the hearing (though he had moved to withdraw on appeal due to a conflict). Id. at 73–76.

According to Mr. Metts, when he and Carter spoke before the sentencing hearing, Carter said he wanted to file an appeal but not at that moment, and Mr. Metts explained to Carter he only had a limited window to file an appeal.[2] Id. at 64. Mr. Metts also testified that after the sentencing hearing and while still in the courtroom, he, Carter, and Carter's mother discussed the sentence Judge Wood imposed—which was below the Sentencing Guidelines. Id. at 64–65. During that conversation, Carter said he was "good" with the sentence he received and instructed Mr. Metts to not file an appeal. Id. Mr. Metts told Carter he had 14 days to change his mind about an appeal, so either Carter or his mother were to call him if Carter did change his mind.[3]

---

[2] Mr. Metts discussed the post-conviction certification form this Court requires counsel to file in criminal cases. He stated that before sentencing he checked the box on the form indicating Carter wished to appeal, but he amended this form after sentencing to show Carter did not want to appeal. Mr. Metts, however, admitted he did not file this certification form at any time and did not have a copy of that form with him during the evidentiary hearing. Hr'g Tr. at 65.

[3] On his cross-examination and re-cross of Mr. Metts, Mr. McIlvaine questioned Mr. Metts about his problems associated with alcohol, including having driving under the influence charges. Hr'g. Tr. at 76–82, 87–88, 90. Mr. Metts stated during re-direct his issues with alcohol did not affect his ability to recall the conversation he had had with Carter and Carter's mother about Carter's appeal after sentencing. In fact, Mr. Metts stated, "Not at all. I remember it very clearly." Id. at 87. During Mr. McIlvaine's re-cross, Mr. Metts testified earnestly and credibly about his issues with alcohol and other personal issues and that those issues did not affect his memories of what happened during Carter's trial and sentencing. Id. at 90.

Mr. Metts also testified that the first time he heard from Carter after sentencing about wanting to file an appeal was about six months after sentencing. Id. at 66, 76.

Additionally, the Government called Matthew Porter, a digital forensic investigator for the Secret Service Electronic Crimes Task Force, to briefly testify during the hearing. Investigator Porter stated he saw Carter, his mother, and Mr. Metts having a conference in the courtroom after sentencing, though he stated he could not hear what was said. Id. at 96–97.

On this first ground raised in Carter's Motion, the threshold issue relates to credibility. The Court must weigh the testimony of Mr. Metts against Carter's self-serving allegations. Generally, when the testimony conflicts, the Court, as fact finder and "ultimate judge of the credibility and demeanor of witnesses," must believe one witness over the other. McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992). To be sure, "the determination of the credibility of a testifying attorney during an evidentiary hearing on a claim of ineffective assistance of counsel is a matter within the Court's good discretion." Whitehead v. United States, No. CV 106-197, 2007 WL 2071532, at *3 (S.D. Ga. July 17, 2007) (citing Carr v. Schofield, 364 F.3d 1246, 1264–65 (11th Cir. 2004).

I find Mr. Metts's testimony at the evidentiary hearing to be more credible than Carter's testimony. I specifically note Mr. Metts was consistent in his responses to the Government's inquiries on this ground and in his testimony: Mr. Metts testified, unequivocally, that on every occasion he had spoken with Carter and his mother after the sentencing hearing Carter accepted the below-Guidelines sentence Judge Wood imposed and did not want to appeal. Even Carter admitted he and Mr. Metts had a conversation after sentencing, though he could not remember what they discussed. Investigator Porter also confirmed that Carter, Carter's mother, and Mr. Metts had a conference in the courtroom after sentencing. Thus, all the witnesses consistently

testified that Mr. Metts spoke with Carter and his mother in the courtroom after sentencing. Mr. Metts was the only witness who provided testimony about what was discussed during this conversation; Carter could not remember what was discussed, and Investigator Porter noted he could not hear what was discussed during this conversation. Further, Mr. Metts testified he did not have any contact with Carter after sentencing until almost six months afterward, which is also consistent with Carter's testimony regarding this time frame.

The Court finds Mr. Metts's testimony credible and, in fact, supported by other testimony and evidence. Thus, Carter did not ask Mr. Metts to file an appeal within the 14-day window, and Carter's inquiry into an appeal almost six months after the sentencing hearing was too late. Carter has not shown Mr. Metts performed deficiently and, therefore, Carter does not meet the Strickland standard on this ground. Holmes v. United States, No. 22-10598-J, 2022 WL 3641209, at *1 (11th Cir. July 26, 2022) (quoting Flores-Ortega, 528 U.S. at 477 ("[A] defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.")). The Court should **DENY** this portion of Carter's Motion.

### B. Mr. Metts's Knowledge and Experience

Carter was an indigent defendant, and the Court appointed Mr. Metts to represent him under the Criminal Justice Act ("CJA"). Carter contends Mr. Metts admitted "[o]n numerous occasions[]" he was a "temporary CJA attorney" and did not have the requisite knowledge and experience to adequately defend Carter. Doc. 105 at 10. Carter alleges Mr. Metts also admitted to reaching out to the Public Defender's Office for help, but no one provided any help. Carter asserts Mr. Metts should have moved to withdraw as counsel due to his lack of experience. Id.

9

Respondent states the Court should deny this ground as impermissibly conclusory. Doc. 112 at 5.  Respondent also states Carter provides no specific error on Mr. Metts's part, nor does Carter establish a reasonable probability any such error affected his conviction or sentence. Id. at 6.

A movant bears the burden of showing entitlement to relief under § 2255.  Beeman v. United States, 871 F.3d 1215, 1222 (11th Cir. 2017).  A movant is not entitled to relief if his claims "are merely conclusory allegations unsupported by specifics, contentions that are wholly incredible on the face of the record, or so patently frivolous as to warrant summary dismissal." Adams v. United States, No. 19-11068-C, 2019 WL 4643730, at *1 (11th Cir. Aug. 20, 2019) (citing Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations omitted)).

Even if Carter's assertions were true—a finding not made—he fails to establish or even argue he was prejudiced by Metts's alleged lack of experience.[4]  Thus, Carter only offers conclusory statements in this regard and fails to show he meets both prongs of Strickland.  Thus, he is not entitled to relief on this ground, and the Court should **DENY** this portion of Carter's Motion.

### C. Lack of Knowledge of Plea Offer

In his Motion, Carter contends he was willing to accept responsibility for the offense conduct by pleading guilty from the beginning of the case, but Mr. Metts never formally

---

[4] There is nothing before the Court indicating Mr. Metts lacked adequate experience to try this case.  In fact, Mr. Metts testified he began practicing law in 2006 and had practiced criminal law from that time, although his main practice area was bankruptcy.  Hr'g. Tr. at 59, 71.  Mr. Metts stated he had represented approximately 20 federal indigent defendants in this District and the Middle District of Georgia.  Id. at 59.  In addition, Mr. Metts stated he tried 20 criminal cases, including three on the federal level and three cases involving computer pornography.  Id. at 82.  It is unclear whether the computer pornography cases were all on the federal level and these were the three federal cases Mr. Metts had tried, but I highlight this testimony to show Mr. Metts did not lack experience with federal criminal cases, computer pornography cases, or general criminal trial experience.

presented Carter with a plea agreement. Doc. 105 at 12. Carter also contends Mr. Metts failed to provide all of the information necessary for Carter to make an informed decision regarding pleading guilty or proceeding to trial. Carter maintains it is more likely than not he would have pleaded guilty rather than proceed to trial had he known about the high rate of convictions in this District. Id.

In response, the Government states the record proves Carter knew of and declined the only plea offer made. Doc. 112 at 7. The Government notes it stated during the pretrial conference that the Government had offered Carter a plea agreement on the second count of the indictment, which was declined, and neither Carter nor Mr. Metts disputed that representation. Id. Additionally, the Government asserts Carter cannot show prejudice because he would not have accepted a plea offer because he "steadfastly professed his complete innocence throughout the case." Id. at 8.

Carter was entitled to effective assistance of counsel during the plea process. However, he still has to show deficient performance and prejudice under Strickland. Carter fails to establish either prong.

Carter was present during the pretrial conference. Doc. 85; Doc. 111 at 2. At that hearing, AUSA Kirkland informed the Court that the Government had offered a plea agreement to Carter prior to the conference on the second count of the indictment and the offer was declined. Id. at 8. Neither Mr. Metts nor Carter corrected AUSA Kirkland or otherwise disagreed with her. During the evidentiary hearing, Mr. Metts stated he had received plea offers from the Government, which he conveyed to Carter, and he "tried to get [Carter] to sign [the agreement] four or five times." Hr'g Tr. at 61, 62. Mr. Metts stated Carter maintained his innocence, would not entertain a plea agreement, and would not accept responsibility. Id. at 62.

11

In addition, during the sentencing hearing, Mr. Metts noted Carter intended to continue "to fight this case on appeal."[5]  Doc. 109 at 4.  Carter also disavowed awareness of the images on his computer.  Id. at 5.  Further, during the May 15, 2024 evidentiary hearing, Carter stated he is innocent of the crimes he was convicted of and will fight his convictions until the day he dies.  Hr'g Tr. at 20, 42, 43, 44.  In addition, at the evidentiary hearing Carter backtracked and conceded Mr. Metts spoke with him about multiple plea offers during the criminal case, but then claimed, "I never saw that on paper."[6]  Id. at 54.

      Carter's claim was further undermined by recordings of telephone calls the AUSA played at the evidentiary hearing.  The first call occurred before trial and was between Carter and his mother.  Carter made the call from the Ware County Jail, where he was held in pretrial detention.  In that call, Carter told his mother that if the Government's case against him was strong, the Government would not have offered him two different plea bargains.  Id. at 52–53.  The second call was also between Carter and his mother, but it occurred much later, in the months leading up to the evidentiary hearing on this matter.  The second call was also made from the Ware County Jail, where Carter had been transferred so he could appear for the evidentiary hearing.  In the second call, Carter stated that "84 months" was part of "a deal" the Government offered just

---

[5] Mr. Metts's statement during sentencing is consistent with Mr. Metts's other testimony—namely, that Carter said he wanted to appeal prior to the sentencing hearing but changed his mind once the below-the-Guidelines sentence was announced.

[6] Carter repeatedly contradicted himself during his testimony at the evidentiary hearing and even contradicted the assertions made in his Motion.  When asked about his contradictions about his guilt or innocence, Carter stated he would accept responsibility if he was guilty of a crime and would enter a plea agreement, but he would not have pleaded guilty to the crimes charged in the indictment.  Hr'g. Tr. at 42.  Moreover, Carter claimed in his Motion Mr. Metts never presented him with a plea offer, but at the hearing, Carter equivocated and acknowledged Mr. Metts talked to him about the offered plea agreement, though Mr. Metts never showed him anything in writing.  Id. at 39, 57.  The distinction between a written plea offer and an oral offer is immaterial and not indicative of ineffective assistance, even if Mr. Metts failed to show Carter a written plea offer.

before trial.  Id. at 55.  These calls show Carter was plainly aware of plea offers the Government made before trial.

In sum, Carter presents nothing more than conclusory and contradictory statements regarding any ineffective assistance related to a plea offer.  In fact, Carter's testimony during the evidentiary hearing undermines his credibility for the contention he did not have knowledge of any plea offers the Government made.  Put simply, Carter's claim that Mr. Metts never conveyed a plea offer is wholly implausible in light of the overwhelming evidence that Mr. Metts did, in fact, convey the offer.  Moreover, Carter's repeated statements that he is innocent and would fight the charges to the day he dies negates any notion of prejudice arising from an uncommunicated plea offer.  Carter does not meet either prong of the Strickland test and is not entitled to his requested relief on this ground.  The Court should **DENY** this portion of Carter's Motion.

### D. Failure to Call an Expert Witness to Testify

According to Carter, Mr. Metts hired an expert to review digital evidence in this case, and the expert only verified the Government's discovery information.  Doc. 105 at 13.  Carter asserts he provided Mr. Metts with eight pages of relevant information for the expert to review and investigate, but Mr. Metts failed to coordinate with the expert for this review.  Carter also asserts Mr. Metts said "information [came] to light that [Mr. Metts] said was 100 percent necessary for trial," but Mr. Metts did not call the expert to testify or present this information to the jury.  Id.

Respondent states Carter does not describe what the expert's testimony would have been or how that testimony would have reasonably resulted in Carter's acquittal at trial.  Thus, the Court should deny this ground as impermissibly conclusory.  Doc. 112 at 8.

Carter's assertions are wholly conclusory and without merit. Carter fails to offer any information about what the expert would have testified about or how the testimony would have helped Carter. Carter would not be entitled to relief on this ground for this reason alone. Additionally, the record belies his assertions. Although the evidentiary hearing was focused on whether Carter asked Mr. Metts file a notice of appeal, Mr. Metts also testified about the retained expert. Mr. Metts explained that the expert wrote a report and he (Mr. Metts) reviewed the report. Ultimately, Mr. Metts made a tactical decision to not call this expert to testify at trial, ostensibly because the expert's testimony would not have been helpful to Carter and the expert did not substantiate Carter's claim that someone was remotely using his computer. Hr'g Tr. at 60–61, 84. Carter offered nothing to refute this testimony. In addition, Carter fails to explain what the "eight pages of relevant information" were or how this information would have altered the jury's findings. Carter is not entitled to relief on this ground, and the Court should **DENY** this portion of Carter's Motion.

E.     **Failure to Review PSR**

Carter contends Mr. Metts did not review the pre-sentence investigation report ("PSR") with him prior to sentencing. Doc. 105 at 13. As a result, Carter asserts Mr. Metts did not explain the Sentencing Guidelines to him, failed to challenge inaccurate information in the PSR, and did not submit substantive objections to the PSR. Id.

Respondent states the record belies Carter's assertion. Respondent notes Carter told Judge Wood at the outset of the sentencing hearing he had had the opportunity to read and review the PSR and to discuss it with Mr. Metts. Doc. 112 at 8.

At the beginning of the sentencing hearing, Judge Wood asked Carter if he had had the opportunity to read and review the PSR and its addendum and to discuss these with Mr. Metts.

Doc. 109 at 2.  Carter replied, "Yes, ma'am, I have."  Id. at 3.  Mr. Metts stated Carter objected to paragraphs 23 through 28 of the PSR, and these paragraphs contain Carter's offense level computation.  Doc. 100 at 9.  It is disingenuous for Carter to now claim he did not review the PSR with Mr. Metts or claim Mr. Metts did not make any substantive objections to the PSR.  The record directly contradicts Carter's assertions.  And even if Carter's assertions were true—a finding not made—he fails to show that he suffered any prejudice as a result of Mr. Metts's alleged failure to review the PSR with Carter prior to sentencing.  Thus, Carter cannot show Mr. Metts was ineffective or otherwise meet the Strickland prongs, and the Court should **DENY** this portion of Carter's Motion.

## II.     Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Carter leave to appeal *in forma pauperis*.  Though Carter has not yet filed a notice of appeal, it would be appropriate to address this issue in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323

(11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Carter a Certificate of Appealability, Carter is advised he "may not

appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Carter's § 28 U.S.C. § 2255 Motion. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Carter *in forma pauperis* status on appeal and a Certificate of Appealability.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the

specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 23rd day of October, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA